## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| *v* | * | **Criminal No. 05-404-03 (RMC)** |
| | * | |
| **RUBILIO ORLANDO PALACIOS** | * | |

### DEFENDANT PALACIOS' MOTION TO SUPPRESS STATEMENTS
### WITH MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Rubilio Orlando Palacios ("Palacios"), through undersigned counsel,

respectfully moves the Court for an Order suppressing his post-arrest statements to government

agents on the grounds that any waiver was not knowing and voluntary. Thus, his interrogation

violated *Miranda v Arizona*, 384 US 436 (1966). In support of this motion, Mr Palacios states as

follows:

### FACTS

Sometime during the summer 2005, government agents began an investigation of Guatemalan

government officials' alleged involvement in narcotics trafficking. The government engaged the

services of a paid informant to set up a bogus drug deal with these officials. At some point during

the investigation, the government obtained information that Mr Palacios was somehow involved

in the bogus drug deal. In November 2005, a federal grand jury indicted the defendants in this

case and the court issued arrest warrants. The government meanwhile arranged for the defendants

to fly to the United States ostensibly to attend port security training. Mr Palacios arrived in the

United States on November 15, 2006. The government arrested Mr Palacios at 11:45 pm on

November 15, 2005. By 11:53 pm the same date, a government agent had secured from Mr

Palacios a "waiver" of his Miranda rights (**EXHIBIT 1**) and conducted a subsequent interrogation. (**EXHIBIT 2**). Although the waiver allegedly signed by Mr Palacios was in his native language, Spanish, he is not familiar with the American justice system and did not adequately comprehend the nature of the rights he was waiving.

During this interrogation, Mr Palacios made statements that could be considered incriminating. First, he denied having received money to facilitate a shipment of cocaine through Guatemala but later acknowledged meeting with two Colombians and receiving money in September 2005. Second, Palacios related that he received a total of $7,000 from the two Colombians and another $2,000 from codefendant Aguilar the week prior to his arrest. Third, he said that he did not know how much money he was to receive upon completion of the cocaine movement through the Port of Santo Tomas but that he would have been satisfied with the $7,000 he had already received. Fourth, he related that he and his two codefendants were working together to assist the two Colombians with moving the container of cocaine through the Port of Santo Tomas. Fifth, he related that one container of cocaine would be moved safely and then the Colombians would send a second container for the purposes of being seized. And, sixth, Palacios related that it was his responsibility to insure that the container entered and left the Port of Santo Tomas without interference from Guatemalan law enforcement.

## ARGUMENT

### Mr Palacios's Statements Were Obtained in Violation of Miranda and Were Not Knowingly and Voluntarily Made.

Before law enforcement officers may question an individual who is in custody, they must warn the individual of his or her Constitutional rights. *See Miranda v Arizona,* 384 US 436, 478-79 (1966). Once a defendant challenges the admissibility of any statements made while in

custody, the government must prove that the defendant was advised of and understood the

Miranda rights and that he or she validly waived those rights. If the government cannot establish

both the warning and the waiver by a preponderance of the evidence, the statements must be

suppressed. *See Colorado v Connelly*, 479 US 157, 168-69 (1986).

A valid waiver of Miranda rights must be knowing, voluntary, and intelligent. *See*

*Miranda,* 384 US at 444. The inquiry into the validity of a waiver of *Miranda* rights "has two

distinct dimensions." *Colorado v Spring,* 479 US 564, 572 (1987) (quoting *Moran v Burbine,*

475 US 412, 421 (1986)). The waiver must be "the product of a free and deliberate choice

rather than intimidation, coercion, or deception," and "must have been made with a full

awareness both of the nature of the right being abandoned and the consequences of the decision

to abandon it." *Spring*, 479 US at 572 (quoting *Fare v Michael C.*, 442 US 707, 725, (1979)).

The Court must "consider the totality of circumstances surrounding [defendant's] statement and

determine if that statement was the result of a knowing, voluntary, and intelligent waiver of the

protections implicit in the *Miranda* warnings." *United States v Tyler,* 164 F.3d 150, 158 (3d Cir.

1998). Such circumstances vary according to the facts of the particular case, including the

background, experience, and conduct of the suspect, see *Oregon v Bradshaw,* 462 US 1039, 1046

(1983), as well as any indicia of coercion.

**a. The Waiver Was Not Knowing**

Mr Palacios was arrested at 11:45 pm, November 15, 2005. At that time he was handcuffed,

searched and escorted from the hotel where he was staying. Needless to say, the experience was

disconcerting for Mr Palacios. While all this was transpiring, a government agent read to Mr

Palacios a Spanish language document and asked him to sign it. Mr Palacios, saw the document, understood that he had to sign and did so.

Although Mr Palacios is a law enforcement officer in his native country, he is a foreign national unfamiliar with the American criminal justice system. In fact, he comes from a country where the police routinely extract confessions from suspects and where American-style rights are not the norm. Merely because he was viewed the form, and signed it, did not mean that Mr Palacios had "a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." It is clear that in a mere eight minutes, Mr Palacios could not have grasped the importance of the rights of which he was being advised, and then also formulated a desire to waive such rights.

## B. The Waiver Was Not Voluntary

The Court must determine the voluntariness of a confession by looking at the totality of the circumstances to decide whether it was coerced or the product of a rational intellect and a free will. *See Withrow v Williams,* 507 US 680, 693 (1993). As described above, the facts indicate that Mr Palacios was advised of his rights, understood those rights and decided to waive those rights in a mere eight minutes. Because this decision had to have been made immediately after being arrested, searched, handcuffed and escorted to an interrogation room, and without sufficient time to reflect upon the waiver, the facts indicate that the waiver was not voluntarily made.

## CONCLUSION

For the foregoing reasons, and any others which may appear to the Court following an evidentiary hearing, Mr Palacios respectfully requests that any custodial statements made by him be suppressed and that the court grant this motion.

Respectfully submitted,

Joseph Virgilio (Bar Nº 237370)
1629 K Street NW
Suite 300
Washington DC 20006-1631
202.686.6914
*Attorney for Mr Rubilio Orlando Palacios*
(Appointed by the Court)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing *Defendant Palacios' Motion to Suppress Statements with Memorandum of Points and Authorities* to be delivered *via* Electronic Case Filing to the Parties in this case on July 10, 2007.

Joseph Virgilio